**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

CARLTON LUMPKINS,

      Petitioner,

v.                                  Case No. 3:08-cv-76-J-32JRK

WALTER A. MCNEIL, et al.,

      Respondents.

_____

## ORDER

### I. Status

Petitioner, an inmate of the Florida penal system, initiated this action by filing a pro

se Petition (Doc. #1) for writ of habeas corpus pursuant to 28 U.S.C. § 2254 and a

Memorandum of Law to Support Section 2254 Petition (Doc. #2) (hereinafter Petitioner's

Memorandum).  He challenges his 2005 state court (Duval County) conviction for three

counts of first degree murder on the following grounds: (1) Petitioner's confession should

have been suppressed because it was involuntary and obtained in violation of his rights to

remain silent and to terminate the questioning at any time; (2) Petitioner was deprived of his

right to an impartial jury because the trial court denied his motion for change of venue even

though there was extensive pretrial publicity regarding the charged offenses; (3) he was

deprived of his right to confrontation when a State witness left the courtroom after direct

examination due to a medical emergency; and (4) the State suppressed impeachment

evidence concerning a key State witness in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) .

Respondents filed an Answer in Response to Order to Show Cause (Doc. #6) (hereinafter Response).  Petitioner has replied.  <u>See</u> Petitioner's Reply to Respondents' Answer (Doc. #9).  Thus, this case is ripe for review.[1]

## II.  Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted).  "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id</u>.  The pertinent facts of this case are fully developed in the record before the Court.  Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert</u>. <u>denied</u>, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

## III.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA), this Court's review "is 'greatly circumscribed and highly

---

[1] The state court procedural history is set forth fully in the Response, and the Respondents concede that this action was timely filed.  <u>See</u> Response at 1-8.  Thus, this Court will not repeat the procedural history herein.

deferential to the state courts.'  Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)."

Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).

> [Section] 2254(d) allows federal habeas relief for a claim adjudicated on the merits in state court only if the state court adjudication[2] resulted in a decision that was:  "(1) . . . contrary to, or involved an unreasonable[3] application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Marquard, 429 F.3d at 1303.[4]  The phrase "clearly established Federal law," as used in § 2254(d)(1), encompasses only the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision.  See Carey v. Musladin, 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000)); Osborne v. Terry, 466 F.3d 1298, 1305 (11th Cir. 2006).

Id. at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' § 2254(e)(1)."  Schriro, 550 U.S. at 473-74.  "This presumption of correctness

---

[2] For a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling.  Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003).

[3] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold."  Schriro, 550 U.S. at 473 (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

[4] Marquard v. Sec'y for Dep't of Corr., 429 F.3d 1278, 1303 (11th Cir. 2005), cert. denied, 547 U.S. 1181 (2006).

applies equally to factual determinations made by state trial and appellate courts." <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

## IV. Findings of Fact and Conclusions of Law

### A. Ground One

Petitioner contends that his conviction was obtained in violation of the Fifth and Fourteenth Amendments to the United States Constitution because his statements to the police were involuntary and obtained in violation of his rights to remain silent and to terminate the questioning at any time. Petition at 5, 12-15; Petitioner's Memorandum at 3-6. Petitioner raised this issue on direct appeal, <u>see</u> Ex.[5] O at 17-21, and the First District Court of Appeal summarily affirmed the judgment of conviction without issuing a written opinion. Ex. Q. Thus, Respondents concede that this claim has been exhausted; however, they contend that it is without merit. Response at 9-20.

The following facts are pertinent in assessing the First District Court of Appeal's adjudication of this claim. Prior to trial, Petitioner filed a "Motion to Suppress Confession and Admissions Illegally Obtained." Ex. D. In the motion, Petitioner argued that the statements should be suppressed because they were involuntary and in violation of his right under <u>Miranda</u>[6] to terminate questioning. The motion was based upon the length of the interrogation, the detective's use of family members to apply pressure upon Petitioner and

---

[5] The Court hereinafter refers to the exhibits appended to Respondents' Index to Exhibits (Doc. #8) as "Ex."

[6] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

4

the failure to honor Petitioner's request to terminate the interrogation.  The trial court held

a hearing on the motion.  <u>See</u> Ex. F.  Thereafter, defense counsel filed an "Amended Motion

to Suppress and Post Hearing Memorandum in Support of," in which he argued that the

statements should also be suppressed because they were obtained through an illegal

detention and arrest.  Ex. E.

   The trial court denied the motion, as amended, stating in pertinent part the following:

> The Defendant was indicted for THREE COUNTS OF FIRST DEGREE MURDER in an INDICTMENT returned on October 17, 2002.  Counsel was appointed to represent the Defendant on October 18, 2002.
>
> On November 29, 2004, the trial of the case was scheduled to commence on March 21, 2005.  The trial had been scheduled to begin in October 2004 and January 2005 but was continued until March 21, 2005.  On February 28, 2005, the Defendant filed the above-described motion.  The hearing on the motion was held on March 4, 2005 and March 10, 2005. Arguments on the motion were heard on March 15, 2005.
>
> From the evidence presented, including the videotapes introduced at the hearing, the Court finds as follows:
>
> 1. On September 26, 2002, three (3) people were murdered by two men who fired weapons into the vehicle they were occupying.
>
> 2. The police determined, based on their investigation, that the Defendant was one of the two (2) men who fired shots into the vehicle.  However, the police were of the opinion that they lacked probable cause to obtain an arrest warrant for the Defendant's arrest.
>
> 3. The Defendant's brother, MARVIN LUMPKINS, had been murdered on September 19, 2002, a week prior to the three (3) murders that are the subject of this case.

4.     The police decided to contact the Defendant and ask him to come to the police station to discuss his brother's murder.  The police actually were interested in interrogating the Defendant about the three (3) murders involved in this case.

5.     The homicide detectives directed two (2) patrol officers to locate the Defendant and to ask that he come with them to the police station.  The patrol officers were not told to arrest the Defendant.

6.     The patrol officers located the Defendant as he was riding as a passenger in a car with a friend.  The friend stopped her vehicle when she and the Defendant realized that they were being followed by the officers' unmarked police car.  This occurred on October 3, 2002 at approximately 10:30 A.M.

7.     The officers informed the Defendant that they had been instructed to ask him to come to the police station with them to answer questions about the recent murder of his brother, MARVIN LUMPKINS.

8.     The Defendant agreed to accompany the officers to the police station.  He was not arrested or threatened with a potential arrest or forced to go to the police station.

9.     The officers did not have an arrest warrant for the Defendant.

10.     The Defendant was transported to the police station in a patrol vehicle.  He was not interrogated before he arrived at the police station.

11.     The Defendant arrived at the police station at approximately 12:30 P.M. on October 3, 2002.

12.     The Defendant was interrogated initially about the murder of his brother.  That interrogation lasted about forty-five (45) minutes.   Nothing noteworthy occurred during that interrogation.

13.     Prior to the Defendant's arrival at the police station, MAURICE SILAS, the person who first began shooting the three (3) victims, had been arrested and he had given a videotaped

6

confession in which he named the Defendant as being the second person involved in the shootings.

14.    The two (2) detectives assigned to this case met with the Defendant at the police station on October 3, 2002 at approximately 1:53 P.M. to begin their interrogation of the Defendant.

15.    The Defendant was told that he would be interrogated regarding the three (3) homicides involved in this case.

16.    The Defendant was properly informed of those rights required by the Miranda decision before he was questioned. The Defendant was not under arrest at that time and he would have been allowed to leave the police station had he chosen to do so.  He did not attempt to leave nor did he express his desire to leave.

17.    The Defendant was not impaired at that time.  No threats were made nor were any promises made.  The Defendant understood the rights as advised by the detectives. He did not invoke those rights.  He voluntarily spoke with the detectives. The Defendant denied any involvement in the three (3) homicides during that first interrogation, which lasted approximately one and one-half (1 ½) hours.  However, the Defendant remained at the police station.

18.    The Defendant was interrogated a second time beginning at approximately 9:00 P.M. on October 3, 2002.  Prior to the second interview, the Defendant was advised by the detectives that MAURICE SILAS had disclosed to them that he, the Defendant, was the second shooter and that other people had informed them that the Defendant had admitted to them that he was involved in the three homicides.

19.    The Defendant gave the incriminating statements that are the subject of this motion during that second interrogation.  That second interrogation was concluded at 3 :40 A.M. on October 4, 2002.  The Defendant was not illegally detained when he made those incriminating statements.

7

20.    The Defendant had been in police custody from 10:30 A.M. on October 3, 2002 until 3:40 A.M. on October 4, 2002 when the second interrogation ended, a time period of approximately seventeen (17) hours.  The Defendant remained at the police station voluntarily in an effort to convince the police that he was not involved in the shootings.  He was attempting to establish an alibi.

21.    The Police summoned several members of the Defendant's family to the police station while the Defendant was being interrogated.    However, at no time did the police threatened [sic] those family members or influence them in an effort to pressure the Defendant into making a statement.[7]

22.    During that seventeen (17) hour period, the Defendant never invoked any of the rights set-forth [sic] in his constitutional rights form.   The Defendant never asked for an attorney.  The Defendant made statements to the effect that he was through with the interrogations and that the detectives should take him to jail.[8]  However, he continued to talk to the

---

[7] The trial court's factual findings regarding the non-coercive nature of the interrogation are entitled to a presumption of correctness.  See Harris v. Dugger, 874 F.2d 756, 762 (11th Cir. 1989) (noting that subsidiary factual questions, such as whether the police engaged in the intimidation tactics alleged by the defendant, are entitled to a presumption of correctness).  Petitioner has not rebutted this presumption of correctness by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1).

[8] Although the audio portion of the videotape is not perfectly clear, it appears that the Petitioner stated the following:

> You're right, you're right.  I'm through with it.  I'm through with it man.  If y'all goin' to take me to jail, take me on to jail, man.  I'm through with it.  I'm through with it.  I'm through with it.  You all can put it all on me.  I'd rather be dead.  All my brother's [sic] dead so I might as well go on with him.
>
> . . . .
>
> I just want to go on to jail, man.  I won't be [inaudible].  It's over with.  It's over with.  Whatever happened, it just happened, man. I'm through with it.  I'm through with it, man.  I'm through with it.

detectives without specifically telling the detectives that he had decided to terminate the interrogation. The detectives were not required to terminate the interrogation at that point. <u>State v. Glatzmaver</u>, 789 So.2d 297 (Fla. 2001).

23.    The Defendant said that he was cold during the time that he was at the police station and he eventually was given a blanket. The detectives did not determine the temperature of the building. Other people were in the building who did not appear to be uncomfortable. The temperature in the police station did not cause the Defendant to make statements that he was unwilling to make.

24.    The Defendant was not threatened with the death penalty in an effort to get the Defendant to make a statement, nor did the police officers involved in the investigation and interrogation of the Defendant engage in any unlawful activities so as to cause the Defendant's statements to have been made involuntarily.

For the foregoing reasons, based on the totality of the circumstances surrounding the Defendant's interrogation, the Defendant's MOTION TO SUPPRESS CONFESSION AND ADMISSIONS ILLEGALLY OBTAINED is **DENIED**.

Ex. H at 1-5.

"[A]s a first step in order to ultimately determine whether the state court's finding that

[Petitioner's] statement was voluntary was contrary to, or an unreasonable application of"

clearly established Federal law, this Court "must independently ascertain and apply Federal

law to determine whether the challenged statement was obtained in accordance with the

---

Take me on to jail. I'm ready to go, man. I'm tired of being in this room. I'm just ready to go man.

Videotaped Exhibits (Doc. #12), State's Exhibit 6A(com).

Constitution." Land v. Allen, 573 F.3d 1211, 1217 (11th Cir. 2009) (per curiam) (citing Lam v. Kelchner, 304 F.3d 256, 264 (3d Cir. 2002)), cert. denied, 130 S.Ct. 2097 (2010).

Miranda "held that preinterrogation warnings are required in the context of custodial interrogations given 'the compulsion inherent in custodial surroundings.'" Yarborough v. Alvarado, 541 U.S. 652, 661 (2004) (citing Miranda, 384 U.S. at 458). Two inquiries are essential to determine whether a suspect is in custody: (1) "what were the circumstances surrounding the interrogation;" and (2) "given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." Id. (quoting Thompson v. Keohane, 516 U.S. at 112).

Given the circumstances of this case, it is difficult to ascertain at what time the interview of the Petitioner became a custodial interrogation.  However, this Court need not address that issue because even assuming arguendo that he was subjected to a custodial interrogation when he made the incriminating statements, the trial court reasonably found that: (1) Petitioner was properly given his Miranda warnings; (2) he voluntarily elected to waive his rights; (3) he never made any unambiguous statements that could be construed as an invocation of his right to cease the questioning; and (4) based on the totality of the circumstances[9] surrounding the interrogation, Petitioner voluntarily confessed.

---

[9] "[A]n examination of the totality of the circumstances is necessary to determine whether [a] confession was actually voluntarily given." United States v. Hall, 607 F.3d 1277, 1285 (11th Cir. 2010) (citing Arizona v. Fulminante, 499 U.S. 279, 287 (1991)).

In particular, with respect to Petitioner's primary claim that he invoked his right to terminate questioning, the United States Supreme Court recently found in <u>Berghuis v. Thompkins</u>, 130 S.Ct. 2250, 2259-60 (2010):

> In the context of invoking the <u>Miranda</u> right to counsel, the Court in <u>Davis v. United States</u>, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), held that a suspect must do so "unambiguously." If an accused makes a statement concerning the right to counsel "that is ambiguous or equivocal" or makes no statement, the police are not required to end the interrogation, <u>ibid</u>., or ask questions to clarify whether the accused wants to invoke his or her <u>Miranda</u> rights, 512 U.S., at 461-462, 114 S.Ct. 2350.
>
> The Court has not yet stated whether an invocation of the right to remain silent can be ambiguous or equivocal, but there is no principled reason to adopt different standards for determining when an accused has invoked the <u>Miranda</u> right to remain silent and the <u>Miranda</u> right to counsel at issue in <u>Davis</u>. <u>See</u>, <u>e.g.</u>, <u>Solem v. Stumes</u>, 465 U.S. 638, 648, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984) ("[M]uch of the logic and language of [Mosley]," which discussed the <u>Miranda</u> right to remain silent, "could be applied to the invocation of the [<u>Miranda</u> right to counsel]"). Both protect the privilege against compulsory self-incrimination, <u>Miranda</u>, <u>supra</u>, at 467-473, 86 S.Ct. 1602, by requiring an interrogation to cease when either right is invoked, <u>Mosley</u>, <u>supra</u>, at 103, 96 S.Ct. 321 (citing <u>Miranda</u>, <u>supra</u>, at 474, 86 S.Ct. 1602); <u>Fare v. Michael C.</u>, 442 U.S. 707, 719, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979).
>
> There is good reason to require an accused who wants to invoke his or her right to remain silent to do so unambiguously. A requirement of an unambiguous invocation of <u>Miranda</u> rights results in an objective inquiry that "avoid[s] difficulties of proof and . . . provide[s] guidance to officers" on how to proceed in the face of ambiguity. <u>Davis</u>, 512 U.S., at 458-459, 114 S.Ct. 2350. If an ambiguous act, omission, or statement could require police to end the interrogation, police would be required to make difficult decisions about an accused's unclear intent and face the consequence of suppression "if they guess wrong." <u>Id</u>., at 461, 114 S.Ct. 2350. Suppression of a

11

voluntary confession in these circumstances would place a significant burden on society's interest in prosecuting criminal activity. <u>See</u> <u>id.</u>, at 459-461, 114 S.Ct. 2350; <u>Moran v. Burbine</u>, 475 U.S. 412, 427, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). Treating an ambiguous or equivocal act, omission, or statement as an invocation of <u>Miranda</u> rights "might add marginally to <u>Miranda</u>'s goal of dispelling the compulsion inherent in custodial interrogation." <u>Burbine</u>, 475 U.S., at 425, 106 S.Ct. 1135. But "as <u>Miranda</u> holds, full comprehension of the rights to remain silent and request an attorney are sufficient to dispel whatever coercion is inherent in the interrogation process." <u>Id.</u>, at 427, 106 S.Ct. 1135; <u>see</u> <u>Davis</u>, <u>supra</u>, at 460, 114 S.Ct. 2350.

[Petitioner] did not say that he wanted to remain silent or that he did not want to talk with the police. Had he made either of these simple, unambiguous statements, he would have invoked his "'right to cut off questioning.'" <u>Mosley</u>, <u>supra</u>, at 103, 96 S.Ct. 321 (quoting <u>Miranda</u>, <u>supra</u>, at 474, 86 S.Ct. 1602). Here he did neither, so he did not invoke his right to remain silent.

Here, too, the Petitioner did not say that he wanted to remain silent or that he did not want to talk with the police. His ambiguous statements about being "through with it" and desiring to be taken to jail were insufficient to invoke his right to cease the interrogation. Thus, the trial court's finding that the detectives were not required to terminate the interrogation at that point was objectively reasonable.

As noted previously, Petitioner contended on direct appeal that his conviction was obtained in violation of the Fifth and Fourteenth Amendments to the United States Constitution because his statements to the police were involuntary and obtained in violation of his rights to remain silent and to terminate the questioning at any time, and the First District Court of Appeal affirmed without issuing a written opinion. Thus, there is a qualifying decision under AEDPA. Upon a thorough review of the record and the applicable law, the

12

First District Court of Appeals' adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on this claim.

### B. Ground Two

Petitioner contends that he was deprived of his right to an impartial jury because the trial court denied his motion for change of venue even though there was extensive pretrial publicity regarding the charged offenses.  Petition at 6, 16-18; Petitioner's Memorandum at 6-8.  Respondents contend that this claim is procedurally barred because it was not raised in state court, although a similar claim of ineffective assistance of appellate counsel (for failing to raise this claim on direct appeal) was raised in a state habeas petition.  Response at 21-23.  This Court disagrees.

In the state habeas Petition, Petitioner argued that "[t]he trial court in this case committed manifest error in denying a change of venue, and petitioner was deprived of a fair trial by an impartial jury as a result, in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution."  Ex. R at 18.  He also claimed that appellate counsel was ineffective for failing to raise this issue on direct appeal.  Id. at 17-18.  The First District Court of Appeal denied the petition, stating only that "[t]he petition alleging ineffective assistance of appellate counsel is denied on the merits."  Ex. S.  Thus, the First District Court of Appeal did not specifically address the unfair trial claim that Petitioner presented in the state habeas petition.  However, as the United States Supreme Court recently noted:

13

> When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. *Cf.* Harris v. Reed, 489 U.S. 255, 265, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis).

Harrington v. Richter, 131 S.Ct. 770, 784-85 (2011).  Thus, this Court is satisfied that this claim has been exhausted.[10]

The record reflects that the trial judge read the indictment to the prospective jurors and advised them of the names of the two co-defendants, Maurice Silas and Latroy Bouknight.  Ex. I at 25-31, 126-29.  Thereafter, the judge asked whether any of the prospective jurors knew anything about the case, and several members of the venire stated that they did.  Id. at 31-34, 70-71, 134-37.  The judge directed those jurors who had indicated that they knew something about the case to stay in their seats and told all of the other members of the venire to return to the jury room.  Id. at 71, 175-76.  The judge and counsel questioned each of these prospective jurors separately about his or her knowledge of the case.  Id. at 73-114, 176-240.  The parties then agreed that fifteen prospective jurors should be challenged for cause, and the judge excused those fifteen jurors.  Id. at 246-48.  Later, the trial judge excused additional prospective jurors because of pretrial publicity concerns, even over the objection of the State.  E.g. id. at 541-42.  Petitioner was consulted and had

---

[10] Respondents also argue that grounds three and four are procedurally barred for the same reason.  This Court is satisfied that Petitioner raised his federal Confrontation Clause claim (ground three) and his Brady claim (ground four) in his state habeas petition, which was denied.  See Ex. R at 22-26.  Thus, grounds three and four have been exhausted.

no additional cause challenges. Id. at 546. The record reflects that, despite the extensive pretrial publicity in this case, the trial court was able to empanel a fair and impartial jury.

Accordingly, upon a thorough review of the record and the applicable law, the First District Court of Appeal's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on this claim.

### C. Ground Three

Petitioner contends that he was deprived of his right to confrontation when a State witness, Dora Gettis, left the courtroom after direct examination due to a medical emergency. Petition at 8, 19-21; Petitioner's Memorandum at 8-10. The following facts are pertinent in assessing this claim. The State called Dora Gettis as a witness at trial. Ex. I at 1144. After being questioned by the prosecutor for some time, Ms. Gettis asked the trial judge if she could take a break because her chest was hurting. Id. at 1168. The court permitted her to take a break and "rescue" was called while the court was in recess. Id. at 1168-69. Thus, the court instructed the State to continue with  its next witness. Id. at 1170-71.

The next day, the court was informed that Ms. Gettis had been admitted to the hospital. Id. at 1237. Thereafter, the State advised the court that it intended to recall Ms. Gettis to give the defense the opportunity to cross-examine her. Id. at 1526-1530. Defense counsel first stated that he did not intend to cross-examine this witness; however, after conferring with Petitioner, defense counsel stated that Petitioner wanted her to be cross-

15

examined.  Id. at 1528-29.  The judge then stated that defense counsel would be given the opportunity to question Ms. Gettis out of the presence of the jury regarding what transpired between the first time she testified and the time she was recalled, id. at 1529-30, and defense counsel did so.  Id. at 1531-39.  Thereafter, defense counsel conducted a brief cross-examination of Ms. Gettis in the presence of the jury.  Id. at 1541-47.  Thus, this calim is without merit.

As noted previously, Petitioner raised this claim in his state habeas petition, and the First District Court of Appeal summarily denied the petition.  Upon a thorough review of the record and the applicable law, the First District Court of Appeal's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on this claim.

### D. Ground Four

Petitioner contends that the State suppressed impeachment evidence concerning a key State witness in violation of Brady.  Specifically, he asserts that the testimony of his co-defendant, Maurice Silas, should have been suppressed because the State failed to disclose before trial that he was working with Detective Corsey of the Jacksonville Sheriff's Office on other cases.  Petition at 9, 22-24; Petitioner's Memorandum at 11-13.

The record reflects that Maurice Silas testified as a State witness against Petitioner. Ex. I at 1442-81.  He testified, in pertinent part, as follows.  He pled guilty to three counts of first degree murder, and would either receive a sentence of death or life imprisonment.  Id.

16

at 1443.  The State did not promise him any specific sentence in return for his guilty pleas.

Id.  In fact, Mr. Shorstein, the prosecutor, told Mr. Silas that the State would ask the judge

to impose a death sentence.  Id. at 1444.

During cross-examination, defense counsel asked Mr. Silas if one of the conditions

of his plea agreement provided as follows: "the State has agreed that they will fully disclose

to the Court, prior to my sentencing hearing, any offers of cooperation made by me and will

further disclose to the Court any actual cooperation by me in the prosecution of Carlton

Lumpkins and/or Latroy Bouknight.  I understand that such disclosure by the State Attorney

in no way binds them with respect to recommending a sentence of life or death in my case."

Id. at 1484.  Mr. Silas responded affirmatively.  Id.  Defense counsel also asked Mr. Silas if

he would not "be cooperating in the eyes of the State" if he testified that Carlton Lumpkins

was not at the scene, and Petitioner replied, "No, sir."  Id. at 1485.

During closing argument, Mr. Shorstein argued the following about the testimony of

Mr. Silas:

> You heard Silas.  He is not getting anything for his testimony.
> We made it very clear his testimony, if the Judge believes it, the
> Judge will give it whatever consideration the Judge wants to give
> it.  We are not giving him any consideration.  He knows that we
> are going to seek the death penalty against Maurice Silas
> because we believe he deserves it so there is no deal.

Id. at 1887-88.

At a hearing on Petitioner's motion for a new trial, defense counsel argued the

following:

> Mr. Shorstein, I think on his direct examination of Mr.
> Silas -- I know he also at his closing argument talked about Mr.

17

Silas -- there is nothing regarding to the Court about his cooperation, he just -- you know, you heard it, he testified; that is all there is to know about Mr. Silas.

So that plea agreement where it says, you know, "cooperation," but the Court will know all of the cooperation on the part of Mr. Silas; Mr. Shorstein made a big deal about, Hey, there was no cooperation, he testified; you heard it, Ladies and Gentlemen.

But after the trial I started realizing -- and I did file a motion for disclosure of impeaching information prior to trial -- then I started realizing and getting information from other cases and discovery from other cases where Mr. Silas was actually working for the Jacksonville Sheriff's Office and setting up inmates at the Duval County Jail.  He is listed as a witness by Prosecutor de la Rionda as a person who wore a -- who attempted to wear a body bug in Meriweather (phonetic) case, his name is listed as a critical witness.

He was taken out of jail on numerous times, coming over and talking with law enforcement on other cases.

And it wouldn't have been so bad, but this jury was told, Hey, there is no cooperation, he's not doing anything to try to better himself.  The only thing we know is, he sat up there and he testified.  That is what the jury was told; that is not really the case.

This man is doing a heck of a lot more than just sitting up here and testifying in this case, he is wearing a body bug, he is working with Jacksonville law enforcement.  In fact, Detective Corsey, one of the lead detectives in this case, is the person working with Silas, Maurice Silas, on the Meriweather case and other murder cases.

So the jury was misled as to the status, and that would have been I think information that on cross-examination of Mr. Silas would have been very informative; that his cooperation doesn't just stop by his testimony up there, he is over there trying to make cases for the Jacksonville Sheriff's Office.

> So he had a lot more interest in this than just sitting up there and testifying because he is actually working for the Jacksonville Sheriff's Office and the State Attorney's Office at the time.

Ex. M at 13-15.

As noted previously, Petitioner raised this claim in his state habeas petition, and the First District Court of Appeal summarily denied the petition.  Upon a thorough review of the record and the applicable law, the First District Court of Appeal's adjudication of this claim was not contrary to clearly established federal law,[11] did not involve an unreasonable

---

[11] The prosecution is required to disclose an agreement between a witness and the government that might motivate the witness to testify, see Giglio v. United States, 405 U.S. 150, 153-54 (1972); however, in this case, the agreement (that the State would fully disclose to the trial court, prior to Mr. Silas' sentencing, any offers of cooperation made by him and any actual prosecution by him in the prosecution of Carlton Lumpkins and/or Latroy Bouknight) was disclosed.  There is no evidence that any other agreement between the State and Mr. Silas existed.  Even assuming arguendo that the prosecutors knew that Mr. Silas was cooperating with police on other cases, and failed to disclose this information to the defense, Petitioner is not entitled to relief.

> In Giglio, the Supreme Court applied Brady to hold that, where the credibility of a witness is at issue, the government is required to disclose evidence bearing on the witness's credibility. 405 U.S. at 154-55, 92 S.Ct. at 766.  "Impeachment evidence should be disclosed in time to permit defense counsel to use it effectively in cross-examining the witness."  United States v. Jordan, 316 F.3d 1215, 1253 (11th Cir. 2003).  The delayed disclosure of Brady evidence compels reversal only when the defendant demonstrates prejudice.  United States v. Beale, 921 F.2d 1412, 1426 (11th Cir. 1991).  In the context of the government's failure to disclose impeachment evidence, a defendant is prejudiced where there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).  "The mere possibility

application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on this claim.

### V. Certificate of Appealability

This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484.

_____

> that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." United States v. Agurs, 427 U.S. 97, 109-10, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976).

United States v. Lawson, 368 Fed.Appx. 1, 4-5 (11th Cir. 2010) (per curiam) (not selected for publication in the Federal Reporter). In this case, there is no reasonable probability that the outcome of the trial would have been different if this information had been disclosed to the defense prior to trial.

20

Petitioner has made the requisite showing with respect to his involuntary confession claim under ground one.  However, he has failed to do so concerning his remaining claims. Accordingly, the Court will grant a certificate of appealability with respect to the involuntary plea claim raised in ground one only.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Petitioner appeals the denial of the Petition, the Court grants a certificate of appealability with respect to ground one only:  Whether this Court's decision under AEDPA to uphold the state court's decision to deny the amended motion to suppress based on a claim that Petitioner's confession had been obtained unconstitutionally was erroneous.

4.      Petitioner is entitled to appeal as a pauper.

5.      The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida this 8th day of February, 2011.

TIMOTHY J. CORRIGAN
United States District Judge

ps 2/7
c:
Carlton Lumpkins
Counsel of Record

21